IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 26-cv-00577-CYC

STANKO KUZMIC,

      Petitioner,

v.

JUAN BALTASAR, in his Official Capacity as Warden at GEO Group Ice Processing Center;
ROBERT HAGAN, in his Official Capacity as Director of the Denver Field Office for U.S. Immigration and Customs Enforcement;
TODD M. LYONS, in his Official Capacity as Acting Director of U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, in his official capacity; and
TODD BLANCHE, Acting Attorney General of the United States, in his official capacity,

      Respondents.[1]

---

**ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Petitioner Stanko Kuzmic, a detainee at the Denver Contract Detention Facility, an immigration detention facility in Aurora, Colorado, petitions for a writ of habeas corpus, contending that the respondents, who control that facility, are improperly holding him. ECF No. 1 (the "Petition"). At a bond hearing after his arrest by Immigration and Customs Enforcement ("ICE") authorities, an immigration judge placed on the petitioner the burden of showing that he was neither a danger nor a flight risk. *Id.* ¶ 2. The Due Process Clause of the Fifth Amendment of the Constitution, he says, requires otherwise. *Id.* ¶ 3. Because this is a

---

[1] Markwayne Mullin, who has become the Secretary of the United States Department of Homeland Security; Todd Blanche, who has become the Acting Attorney General of the United States; and Robert Hagan, who has become the Director of the Denver Field Office of the United State Immigration and Customs Enforcement, are substituted for the individuals formerly in their positions as defendants in this case. *See* Fed. R. Civ. P. 25(d).

1

fundamentally legal debate, there is no need for a hearing on the Petition. *See* 28 U.S.C. § 2243. For the reasons that follow, the Court grants the Petition in part.

## BACKGROUND

The petitioner, a citizen of Bosnia Herzegovina, has lived in the United States since May 2021. ECF No. 1 ¶ 1. ICE officers arrested him on October 23, 2025, *id*. ¶ 2, pursuant to authority given them "to arrest[] and detain[]" an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Because that statute provides the potential for bond, *see id.* § 1226(a)(2), an immigration judge held a bond hearing for the petitioner six weeks later. ECF No. 1 ¶ 2. There, the judge placed the burden on the petitioner to prove that he was neither a danger nor a flight risk. *Id.* ¶ 33. Conceding that the case was "close," ECF No. 1-2 at 2, the immigration judge concluded that while the petitioner met his burden as to dangerousness, he did not as to flight risk. ECF No. 1-1 at 1. The petitioner appealed the decision to the Board of Immigration Appeals ("BIA"), who affirmed. ECF No. 1 ¶ 36; ECF No. 11-1 at 5.

The petitioner now seeks release or, in the alternative, a bond hearing, and legal fees and costs. ECF No. 1 at 11. At any bond hearing, he argues that the government should bear the burdens he previously bore. *Id.* The respondents initially argued that the petitioner should first be required to exhaust administrative remedies; that argument is now moot, given the BIA's decision. On the merits, the respondents contend that allocating the burden to the petitioner comported with due process.

## ANALYSIS

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241.

2

This includes "[c]hallenges to immigration detention." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in [removal] proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citation omitted), and, thus, a detainee may bring a habeas petition if his confinement violates that amendment's guarantee of due process. *See, e.g.*, *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1212 (10th Cir. 2009). The individual in custody bears the burden of proving that their detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941). To meet that burden, the petitioner argues that because the Due Process Clause requires the government to bear the burden of proving that he is a flight risk or a danger at a section 1226(a) bond hearing, the immigration judge's allocation of burdens was unconstitutional. ECF No. 1 at 11.

Section 1226(a) itself is silent as to which party bears the burden at the redetermination hearing. *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1179 (D. Colo. 2024). Until its decision in *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999), the BIA long held that the government bore the burden of proving that detention was warranted. *See L.G.*, 744 F. Supp. 3d at 1179. In *Adeniji*, the BIA changed course, placing the burden on the noncitizen "to prove that 'his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings.'" *Diaz-Ceja v. McAleenan*, No. 19-CV-00824-NYW, 2019 WL 2774211, at *6 (D. Colo. July 2, 2019) (quoting *Matter of Adeniji*, 22 I. & N. Dec. at 1116).

The Tenth Circuit has not addressed who has the burden at a section 1226(a) bond hearing, and the state of the law has been described as a set of "all-over-the-map holdings" comprising "a circuit splat." *Black v. Almodovar*, 156 F.4th 171, 174 (2d Cir. 2025) (Nandani, J., dissenting from denial of rehearing en banc). The First and Second Circuits have held that prolonged detention under section 1226(a) requires a bond hearing at which the government

bears the burden. *See Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). Nearly all of this District's decisions agree. *See, e.g.*, *Martinez v. Baltazar*, No. 26-CV-01313-NRN, 2026 WL 925537, at *3 (D. Colo. Apr. 6, 2026); *Guevara Garcia v. Bondi*, No. 1:26-CV-01012-SKC, 2026 WL 835766, at *3–5 (D. Colo. Mar. 26, 2026); *Lopez v. Noem*, No. 25-CV-04089-NYW, 2026 WL 206220, at *5 (D. Colo. Jan. 27, 2026); *Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159–60 (D. Colo. Jan. 14, 2026); *Barreno v. Baltasar*, No. 025-CV-03017-GPG-TPO, 2025 WL 3190936, at *2–4 (D. Colo. Nov. 14, 2025); *Arauz v. Baltazar*, No. 1:25-CV-03260-CNS, 2025 WL 3041840, at *4–5 (D. Colo. Oct. 31, 2025); *Arredondo v. Baltazar*, No. 1:25-CV-03040-RBJ, 2025 WL 4083607, at *3–5 (D. Colo. Oct. 31, 2025).  The Third, Fourth, and Ninth Circuits have allowed the burden to remain on the noncitizen. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022); *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018). Some decisions from this District have followed suit. *See, e.g.*, *Basri v. Barr*, 469 F. Supp. 3d 1063 (D. Colo. 2020); *De La Cruz v. Baltazar*, No. 26-CV-00360-PAB, 2026 WL 439217, at *4 (D. Colo. Feb. 17, 2026). *But see Ochoa v. Mullin*, No. 26-CV-00968-PAB, 2026 WL 972344, at *2 (D. Colo. Apr. 10, 2026) (departing from *De La Cruz*).

This Court has not previously decided the issue. It now follows the First Circuit in holding that the government bears the burden at such a hearing of proving dangerousness by clear and convincing evidence and of proving flight risk by a preponderance of the evidence.

## I.    Who Should Bear the Burden

Under our Constitution, no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). The Circuits, albeit with varying outcomes, have

applied the *Mathews* test "when considering due process challenges to § 1226(a) like the one here." *Rodriguez Diaz*, 53 F.4th at 1206 (collecting cases). Under that test, determining whether an administrative procedure is "constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews*, 424 U.S. at 334 (citation omitted). That analysis considers (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action." *Id.* at 348.

The first factor, "the private interest that will be affected by the official action," 424 U.S. at 335, favors placing the burden on the government. Here, that private interest is freedom from the detention that the petitioner has now experienced for over six months.[2] ECF No. 10 at 13. Courts have held that his conditions are "more akin to incarceration than civil confinement," *L.G.*, 744 F. Supp. 3d at 1182 (quoting *Daley v. Choate*, No. 22-CV-03043-RM, 2023 WL 2336052, at *4 (D. Colo. Jan. 6, 2023)); *see Hernandez-Lara*, 10 F.4th at 28, and that "the interest in being free from imprisonment" is "the most significant liberty interest there is." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Even "civil commitment *for any purpose* constitutes a significant deprivation of liberty that requires due process protections." *Hernandez-Lara*, 10 F.4th at 28 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). This factor, then, weighs in the petitioner's favor.

---

[2] To the extent the length of the petitioner's detention enters into the analysis, then, it elevates his private interest.

The government resists this conclusion. "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), it says, and therefore the petitioner's interest in freedom is less weighty here. ECF No. 9 at 11. Of course, Congress never put the burden on the petitioner. *See L.G.*, 744 F. Supp. 3d at 1179. That was the BIA's doing. *See Matter of Adeniji*, 22 I. & N. Dec. at 1116. Moreover, the government's rule permitting detention of aliens is already something that would be unacceptable as applied to most citizens accused of a civil-law violation. After all, "there are not many instances of civil confinement (aside from immigration detention . . .)," *Jennings v. Rodriguez*, 583 U.S. 281, 335 (2018) (Breyer, J., dissenting), and those that exist often rely on the dangerousness inherent in the category of person subject to detention, *see id.*, whereas "removable status itself . . . bears no relation to a detainee's dangerousness." *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001). In all events, "[e]ven if Petitioner is a noncitizen in removal proceedings, that does not mean that he does not have a strong private interest in being free from civil detention." *L.G.*, 744 F. Supp. 3d at 1187. Indeed, "the fact that some detention is permissible" in immigration cases "does not change the fact that a detainee suffers significant liberty deprivations" in the same way criminal defendants do. *Hernandez-Lara*, 10 F.4th at 28. The petitioner's private interests therefore weigh in his favor.

The second factor — "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335 — also weighs in the petitioner's favor. To begin, requiring the petitioner to prove an absence of flight risk and danger to the community entails proving two negatives and, "[a]s a practical matter it is never easy to prove a negative," *Elkins v. United States*, 364 U.S. 206, 218 (1960). Thus, "requiring a noncitizen to prove that they

are *not* a flight risk and *not* a danger to the community is an inherently more difficult burden to meet than proving the affirmative." *Alfaro Herrera v. Baltazar*, No. 1:25-CV-04014-CNS, 2026 WL 91470, at *10 (D. Colo. Jan. 13, 2026). Allocating to the petitioner the burden of showing a lack of dangerousness exemplifies the problem: "adjudication of dangerousness will naturally tend to begin with the government offering a reason to find a particular person dangerous, with that person then addressing the proffered reason." *Hernandez-Lara*, 10 F.4th at 31. That is because the government has "extensive resources and expertise in immigration law" making it "better equipped to . . . present evidence" on "whether Petitioner is a . . . danger to the community," *Alfaro Herrera*, 2026 WL 91470, at *11, including the "law enforcement records" that often serve as the basis of a dangerousness argument. *Hernandez-Lara*, 10 F.4th at 31. Placing the burden of showing an absence of dangerousness on the petitioner upends this natural order, requiring a detained noncitizen without access to relevant records to try to prove a negative. This increases the potential for error.

There is more. Unlike criminal defendants, "noncitizens have no right to be provided with counsel in immigration proceedings and very often cannot obtain counsel on their own, particularly if they are detained." *Id.* at 30 (citations omitted). While detained, they "will likely experience difficulty in gathering evidence on their own behalf," "often lack full proficiency in English," and "immigration law and procedures and the particular preferences of individual [immigration judge]s are likely much better known to government representatives than to detainees." *Id.* at 30–31. All of this increases the risk of error when the petitioner bears the burden of persuasion. The second factor weighs in the petitioner's favor.

The government protests. Multiple levels of administrative review, it says, make the risk of error "relatively small." ECF No. 9 at 12 (citing *Rodriguez Diaz*, 53 F.4th at 1210). "But

because the burden is always on the noncitizen" in these administrative reviews, "the availability of review does little to change the risk of error inherent in the current burden allocation." *Hernandez-Lara*, 10 F.4th at 32. "Loaded dice rolled three times are still loaded dice." *Id.* The layers of review do little to correct for the factors that contribute to the potential erroneous deprivation of liberty in the first instance, and the government adduces no specific argument to the contrary.

The final factor — "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *Mathews*, 424 U.S. at 335 — does not sway the balance in the government's favor. Detention, the government says, "increases" the chance of a successful removal of a noncitizen ordered removed. ECF No. 9 at 13. That, of course, is axiomatically true: detention would "increase" the government's ability to remove a noncitizen to close to 100%. And, to be sure, "[t]he prompt execution of removal orders is a legitimate governmental interest." *Hernandez-Lara*, 10 F.4th at 32 (citing *Nken v. Holder*, 556 U.S. 418, 436 (2009)). But "[w]hat is at stake . . . is . . . who should bear the burden of proving noncitizens pose a danger or a flight risk." *Id.* Considered in that light, it is difficult to weigh heavily the government's interest in detaining a noncitizen for whom it cannot prove — even by a preponderance, as the Court concludes below — a risk of flight. In other words, the government's argument does not "explain why its proffered interest . . . holds sway where a noncitizen is not a flight risk." *Id.* at 32.

This is especially true in light of the "substantial societal costs" imposed by "needless detention" for noncitizens who are, in reality, neither dangerous nor a flight risk but have difficulty satisfying a burden of proving those negatives for lack of resources, counsel, familiarity with legal processes, or English ability. *Id.* Those costs are not only societal: "limiting

8

the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention." *Id.* Indeed, detention is costly — approximately $134 per person, per day, as of 2018. *Velasco Lopez*, 978 F.3d at 854 n.11 (citing Dep't of Homeland Security, U.S. Immigration and Customs Enforcement Budget Overview (2018) at 14). It is likely more costly today. Thus, while shifting the burden to the petitioner increases the detention rate, it does not do so in a way that serves the government's interest well enough to tilt the balance in its favor.

Nor does the government's conclusory argument that a noncitizen is better suited to demonstrate his lack of dangerousness, ECF No. 9 at 13, make sense. The government points to no evidence on dangerousness to which a noncitizen has superior access. In most cases, one imagines that a noncitizen would simply point to his lack of criminal history — records the government can easily obtain. As applied to this petitioner, there have been five years since his 2021 arrival in the United States, ECF No. 1 ¶ 1, and, as a result, the government can assess his dangerousness by, among other things, its "computerized access to numerous databases and to information collected by DHS, DOJ, and the FBI, as well as information in the hands of state and local authorities." *Velasco Lopez*, 978 F.3d at 853. Even where the noncitizen is a more recent arrival, the government suggests nothing specific that he could offer regarding a lack of dangerousness beyond the government's abilities.

The government's individual arguments on each one of the *Mathews* factors therefore do not tilt the balance in its favor. And together, its arguments — which mirror those in *Miranda*, 34 F.4th at 359–65, and *Rodriguez Diaz*, 53 F.4th at 1207–10 — suffer from a more fundamental flaw: they admit of no end. The government deploys a three-pronged argument to justify putting the burden on the petitioner: (1) it can make harsher rules for noncitizens; (2) the process has

9

layers of review; and (3) it has an interest in making sure that people ordered removed are in fact removed. But the same rationale would apply to burdening the petitioner with proving a lack of flight risk and dangerousness beyond a reasonable doubt — or even beyond all possible doubt, a standard employed nowhere in American jurisprudence. Making the burden so heavy as to be unbearable would still further the government's interest in removal, preserve multiple levels of review, and be a harsher rule for noncitizens than for citizens. That, of course, would render section 1226(a)'s bond hearing a nullity, but for process to be due, it must be "meaningful." *Mathews*, 424 U.S. at 333. The First Circuit's logic demonstrates why the burden must rest on the government to make the process meaningful; the government's logic, by contrast, can justify an obviously unmeaningful form of process. It therefore lacks the power to persuade.

The short of it is that the *Matthews* factors weigh in the petitioner's favor. The petitioner shall have a second bond hearing, with the government carrying the burden.

## II.    What the Burden Should Be

Having so concluded, the question remains of the nature of that burden. The First Circuit held that as to dangerousness, "the government must justify detention by clear and convincing evidence," looking to civil-commitment cases and other cases involving "significant liberty interests." *Hernandez-Lara*, 10 F.4th at 40. But as to flight risk, given that "there is less risk of error from a preponderance standard on this issue because . . . detained citizens possess knowledge of many of the most relevant factors, such as their family and community ties, place of residence, length of time in the United States, and record of employment," it required only "that the government . . . carry its burden by a preponderance of the evidence." *Id.* Those are the appropriate burdens here.

To be sure, some courts have held that *Hernandez-Lara* placed too light a burden on the government regarding flight risk. *See, e.g.*, *Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 628–29

10

(W.D. Mich. 2026). But the reasons advanced for doing so are unpersuasive. First, they note that ICE keeps statistics regarding detainees' attendance at immigration proceedings. *See id.* at 628. But it is unclear why that compels a clear-and-convincing-evidence standard on flight risk. In criminal cases, a typical bond report contains information about the defendant's court attendance compiled from every jurisdiction to which the Probation Office has access and, still, the government's burden there is a preponderance of the evidence. *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). It is unclear why the Constitution would demand more in the immigration context. *See Barreno*, 2025 WL 3190936, at *3.

Second, they point to language in the Supreme Court's decision in *Addington v. Texas* that "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." 441 U.S. at 427; *see Soto-Medina*, 817 F. Supp. 3d at 628–29. But, in context, that "more substantial" standard was necessary because of "the possible risk that a factfinder might decide to commit an individual" involuntarily to a mental hospital "based solely on a few isolated instances of unusual conduct." *Addington*, 441 U.S. at 427. Thus, there was a risk of error on a preponderance standard that a court might commit an individual based on nothing "more serious than is demonstrated by idiosyncratic behavior." *Id.* That risk of jumping to conclusions based on a paucity of data is less present in a determination of flight risk, especially where the noncitizen possesses knowledge relevant to that determination. *See Hernandez-Lara*, 10 F.4th at 40. It may be good policy to require clear and convincing evidence of flight risk for detention. But no authority compels the conclusion that the Constitution demands it.

### III.    Attorneys' Fees

There is a final matter. The petitioner requests attorneys' fees and costs. ECF No. 1 at 11. But D.C.COLO.LCivR 54.3(a) requires that "a motion for attorney fees . . . be supported by affidavit," and no such affidavit supported the request. Further, "a motion involving a contested issue of law shall . . . be supported by a recitation of legal authority in the motion." D.C.COLO.LCivR 7.1(d). As a result, the Court denies this portion of the Petition without prejudice. If the petitioner chooses to file a motion for attorney fees, it must comply with all applicable rules and provide legal authority for the request. *See L.G.*, 744 F. Supp. 3d at 1187.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Petition, ECF No. 1, is **GRANTED in part** and **DENIED without prejudice in part**.

It is further ORDERED that

(1) the respondents shall provide the petitioner with a bond hearing under 8 U.S.C. § 1226(a), with the government bearing the burden of proving that the petitioner is a flight risk by a preponderance of the evidence or a danger by clear and convincing evidence, within **seven days** of this Order; and

(2) the respondents shall file a status report within **five days** of the petitioner's bond hearing, stating whether he has been granted bond, and, if his request for bond was denied, the reasons for that denial.

Entered and dated this 12th day of May, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

12